Good morning, your honors. My name is Michael Poole. I represent Appellant in this matter. Before I start, I'd like to request three minutes for a rebuttal if necessary. Keep your eye on the clock. It counts down. Okay, thank you. If you boil this case down to its basic components, I think it's about one simple question. And that question is, did Appellee prove with legal certainty that the amount in controversy in this case is over $75,000? I don't see that. I didn't see any evidence to that effect. There was some speculation based on an old notice of default, which wasn't even in effect at the time of the case. So what was your client asking for in state court? To remand. No, no, no. What did you want? If you'd gotten what you'd asked for in the complaint, what was, in your view, what was it going to be worth? I think it would be worth probably maybe $60,000, but again, the burden of proof is on the other side. So tell me what you were asking for in conceptual terms so I can do my own math. The difference between the interest payment of what is on the note or what is being billed versus the interest of what she thought it was to be. Over the life of the note? Well, not over the life of the note. Why not? Up to the time that we filed the case. That's the amount in controversy. I thought you wanted a completely different note. Just the difference in interest that she was already charged up to that point. Did you seek relief from the note? Did you want to get out from under it? No, we're not seeking the note at all. Just the interest. But you wanted to keep the note, but at the lower interest? Yes, at the difference between whatever the interest was supposed to be and what it actually was charged. But you wanted to keep the note for the duration of the note? Yeah. Oh, well then why did you answer as you did to Judge Pius? Pius just asked, do you want the difference for the duration of the note? And you said no. Well, for going forward, yes. But as far as the damages in the lawsuit. Why isn't that part of the value for removal purposes? Well, because the amount in controversy is the difference. It doesn't have to be damages. What's that? It doesn't have to be damages. It has to be the value of what you're asking for. I submit that it is under $75,000 based on my calculations. I understand that, but we're trying to understand your calculations. And if your calculations are the interest difference and you want the note and it's over the life of the note, then it's more than $75,000, no? No, because, well, first of all, before I answer that question, isn't the burden of proof on the opposing side to show this amount? I mean, the burden of proof isn't on me to show it. The burden of proof is on them to show it. But they can satisfy the burden of proof by showing what you're trying to get. So we're trying to figure out what you're trying to get. Well, we're trying to get the interest rate, the difference in interest rate between the time of the notice of default up until we file the case, which is the difference in interest rate, which she discovered. So you're telling me you were not trying to preserve the note at the lower interest rate for the life of the note? I'm not saying that, Your Honor, but I'm saying the amount in controversy is only up until the time I file the case. Well, you know, I think there's a basic misunderstanding of the law, then, because in suits where the only thing at issue is prospective relief, either declaratory or injunctive, that doesn't get you out from under the $75,000 calculation. You look at what's at issue with respect to the prospective relief, even if it's not a request for damages. Understood? I understand it. So if you're asking for, as part of your relief, not only payment of damages for the difference in the interest rate up to now, but also want to preserve for the life of the note the difference in the interest rate, we add those two things together. And when we add those two things together, do we come up to more than $75,000? Again, I submit that the burden of proof is on the other side. That's not my question. When we add those two things together, do we get more than $75,000? I don't know, Your Honor. I have to go and calculate that. Okay. Okay. Anyway. Why don't you move on to the next part? Yeah. Well, I mean, basically, did the court have jurisdiction? I'm saying no, because it was not. Well, let's assume that the court did have jurisdiction. Okay. So what else are you complaining about? Do you think Judge Gutierrez abused his discretion in dismissing? No. That's my next point. He didn't abuse his discretion? Well, I mean, of course, a judge always uses their discretion. No, abuses. Yes, abuse. Yes, he did. And the reason is because two reasons. First of all, an opposition was filed. And second of all, sufficient facts were pled in that opposition. It was late. In the complaint. It was late. Yes. So for those two reasons. The opposition was late. It was late one day, I admit. However, it was. Look to me as well. It was about two weeks late. No, it was one day late. It came in more or less the day that he signed the order dismissing. Yes, he signed the order immediately the day late. But I happened to have filed the opposition before that. But it was not two weeks late. It was exactly one day late. Well, I may want to hear from the other side on that. But my calculation is you're about two weeks late. I strongly disagree with that, Your Honor. So how do you calculate your one day? Well, we had a certain amount of time to file the opposition. And it was one day late. Okay. Well, we'll hear from the other side on that point. Sure. If it was one day late, you might be right. If it was close to two weeks late, you might be wrong. Okay. Well, I swear under penalty of perjury it was one day late. Oh, you know, we had a lot of perjury cases yesterday. You don't want to do that. You don't want to swear under penalty of perjury. Don't ever do that. Okay. You'll get three years in jail. You'll get deported. We'll take your firstborn. I mean, all kinds of terrible things happen. Well, I think we can all agree that it was late. It was one day late. But it was filed before the dismissal. Okay. Now, I'll go with your statement for the purposes of this question. It was one day late and it was, therefore, an abuse of discretion. And so I'll, therefore, look at the merits, which is to say, what do we do with statute of limitations? I think you're late on the statute of limitations. Well, I disagree again, Your Honor. No surprise. The reason I disagree with that is California has a discovery rule. And the discovery, it seems to me, is read the papers. I mean, read the loan documents. Well, I mean, like minds can differ over whether a layperson can understand what's in the loan documents, what they were told. In this case, my client was told to sign here, here, and here. I look at California law in a slightly different context with regard to whether you can demonstrate reliance on something other than the loan documents. I think it's in the context of parole evidence rule and fraud, not the statute of limitations, but I would think would be the same, is that in rare instances you can, but the rare instances need to be demonstrated as somehow extraordinary or unusual. Is that not correct? Well, I think this is not an issue for a 12B6 motion. This is a motion to dismiss based on the face of the complaint. And whether or not it was reasonable or extraordinary is a matter for another hearing. I mean, we sufficiently pled facts, in my opinion. Is there any case law in California in the statute of limitations context first on whether you can have discovery under these circumstances, i.e., where you claim that you were told something different than is apparent on the, and this is pretty apparent, on the face of the documents? Well, I, you know, you're hitting me on the spot with the particular case. What's the issue in the case that you think you know the answer? I think Sun and Sand versus United California Bank. Again, I mean, to me it's just logical. Some lay people don't understand terms like interest only and deferred principal balance, and these sort of terms are not apparent to lay people. Right. The question is whether California, that's certainly true, but whether California recognizes that lack of knowledge as, or sophistication as a basis for telling limitations periods is a legal question. Well, it's not so much lack of knowledge as to whether she was misled. I mean, that's the issue here. A lot of people go in thinking they're getting a 30-year fixed rate loan based on what the bank is telling them, and in those loan docs there's interest only for this and that, and, you know, is a lay person responsible for understanding all of that, or do they rely on the people? I understand that's the question. What's the answer in California law? I believe the answer is that... Do you have a case? Either direction. I think Sun and Sand versus United California Bank is the case, if I recall correctly. Your claims just all turn on what happened at the outset of the... What was it? Do all your claims turn on the initiation of the note? Yeah. Everything is grounded in the fraud. Yes. So there's no difference, there's no distinction in your unfair competition or claims? Well, there's... I mean, there's different claims, but the California rules say, you know, it's all based on one, and in this case, it's fraud. It's concealment and fraud and misleading. That's what happened to my client. But again, I maintain that this is not an issue for motion to dismiss at this stage of the pleadings. This is a question of fact that has to be cited later on. Was it reasonable or not? It comes down to all sorts of different circumstances and evidence. Well, I have to say I'm somewhat sympathetic with any lay person, or maybe even a lawyer, trying to decipher mortgage documents. But the problem is, as Judge Berzon has been pressing, what's California law on the point? You're down to about two minutes and 40 seconds. Why don't we hear from the other side, and then you'll have enough time to respond. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm Brian Leifer on behalf of SunTrust Mortgage Inc., and I'm here with my colleague Robert Yap, also representing SunTrust. Before we can even get into these issues of the motion to dismiss and the other issues, we have to take a look at plaintiff's notice of appeal, which is only an appeal as to the motion to dismiss, the dismissal order. It was not an appeal. As a general matter, does the question of what's in the notice of appeal matter very much in the case law when, in fact, it's from a final judgment? This is wrapped into the final judgment. It was briefed. I mean, what difference does it make? Well, Your Honor, I would submit that, with respect to the controlling case law in the Ninth Circuit, there's a case called Hasbro Industries v. Constantine, and that case really held, and this Court held, that a defendant or an appellee has to have some sort of adequate notice of what's going to be appealed. Well, you should know from your first-year civil procedure class that subject matter jurisdiction remains an open question throughout the case. Correct, Your Honor. Into appeal. So if you're arguing that the remand question is before us because of the notice of the appeal, you're out of luck on that one. Okay, Your Honor. Well, I thought I'd give it a shot. With respect to the issue of – Why are you sitting here telling us something so questionable, quite aside from the jurisdiction? I will get to the stronger argument, which was the issue of the denial of remand and the standard. And we can agree, Your Honor, that the standard for remand is no standard of review. However, the Court's calculation of figures, and the District Court did a calculation of these 44 mortgage payments to look at what the amount is of controversy. And that is a review. But they're now saying they don't want the mortgage payments. Now, they – or – the complaint seems to say they want the mortgage payments, but they're saying what they really want is the difference in interest. Does that make a difference? Well, Your Honor, it doesn't, because as noted earlier by this Court in oral argument, it really is the amount of controversy. And what is the amount of controversy here? And as the District Court rightly pointed out, the amount of controversy was the 44 mortgage payments that were at issue or contested. And the – Well, suppose it wasn't. Suppose it was the difference in interest. First of all, is the interest higher or lower when you have an interest-only loan? The interest remains fixed for the duration of the loan. Right, but higher than it would be otherwise or lower than it would be otherwise? Well, Your Honor, that would actually depend on the LIBOR rate, which is set where it could bounce up or down. So potentially, plaintiffs could be paying a lower interest rate or a higher interest rate based on the fluctuation in interest rates. So that would be the risk of having an adjustable rate loan. In this case, the judge – the District Court judge made a calculation as to the total amount of payments that were in dispute here, which was 44. And the Ninth Circuit reviews that. That standard is actually clear error. And that's a highly deferential standard, as this Court knows, to the District Court because the District Court's making calculations as to the factual amount in controversy, which it did. And it came out to about $127,000. But that's the calculation on the assumption that what's at issue is only sort of repayment of what's already been paid. What about the theory that's now being advanced, that what he was after was the difference in the interest payments over the life of the loan rather than what had been paid in interest in total up to the time of filing the lawsuit? Well, yes, Your Honor. Even if that were the case, that could be potentially – what's being argued now is what the recovery would be, what the plaintiff would be seeking in damages at the lower court. However, we're looking at the amount in controversy, the total amount at that issue, which was these mortgage payments over a substantial period of time. Are you talking about the past mortgage payments? Correct, Your Honor. Well, you didn't understand my question then. He says that he wasn't after the refund of the mortgage payments that had been made. He says that what he's after is, on behalf of his client, the difference in the interest rate on the documents compared to the interest rate that she should have been charged over the life of the note. Correct, Your Honor. So what do we do if that's the calculation? Well, if that's the calculation, Your Honor, we do take a look at what the interest payments were, but we also take a look at what the payments were over the entire life of the loan. Oh, yeah, that's my question. So how do we calculate that? Well, we would calculate it as based on what's stated in the deed of trust. And what's stated in the deed of trust is that it's a 30-year fixed loan. So you would take 30 years of payments, which every payment's about 12 months of payments per year, and times that by 36. And we would get a calculation as to the amount of controversy. And if we make that calculation, that's well over the $75,000 minimum threshold. Well, you just said in light of the numbers. Well, as to the numbers, the mortgage loan was issued in 2006. There were payments made until about 2009 when there was a default. But you said that the interest could even be less, not more. I mean, in other words, if it was really the interest difference thereafter, do we have any idea what the interest difference is? It could be $0.05 a month. Correct, Your Honor. I would say that the interest would probably be, in terms of a monthly amount, if the issue were solely interest, might range between a couple hundred dollars to $1,000 difference per month. And you're saying that might is sufficient to carry your burden of proof as to the amount of controversy? No, I'm not, Your Honor. And the reason I'm not is that the total amount of controversy, from our perspective, isn't just the interest rate. It's the total amount of mortgage payment per month, which would be the total amount of controversy. You know, you keep walking away from my question. My question is not what the total amount of interest payments were that had already been made at the time of filing the complaint. That was the calculation upon which the district judge calculated $125,000 and change. Correct, Your Honor. I'm asking a different question. I'm asking the question that is now being presented to us, maybe too late, but is now being presented to us by the plaintiff, which is how do you calculate if what is sought is the difference in the interest rate on the note over the life of the note compared to what should have been charged in interest over the life of the note? Well, Your Honor, with respect to the future interest rate, that would be speculative. We would have information as to the interest rate after the plaintiff defaulted on the loan, after the calculation was made by the district court. And we would have that information based on what the past interest rate is, which is actually. But the point is it hasn't been done. And it could, in fact, as you said at the outset, be zero to very little. Well, it could potentially be very little in terms of the rate of interest. So then the question is, so it seems to me if that's what really what they were after and it's all that, and that's the right calculus, you probably haven't met your burden. Well, Your Honor, I don't. But the question is, is it the right calculus? You're saying no. What did he allege in the complaint? Well, Your Honor, he alleged in the complaint that there was a UCL violation. That's what I was going to try to get to with respect to the issue of injunctive relief, is that in the end, in the scheme of things, all that this case really is about is the delay of a foreclosure sale and the seeking of injunctive relief and restitution. And the reason why Business and Professions Code 17-200 claim is important is that the only remedies under that claim are restitution or injunctive relief. And given that injunctive relief is key, courts have held that the amount of controversy is actually what the deed of trust was, what the note was, which was about $508,000, including a second mortgage loan, which was $127,000. So what we would also argue was that the district court should have taken that into account in its analysis and also pegged the amount of controversy as the amount of the deed of trust, as many other district courts have held. Well, no matter what they're going to do, they're not going to get the house outright. That is correct, Your Honor. We would say that they wouldn't be able to get the house outright, but they would be able to delay, which has happened, delay the foreclosure sale. How could it be that the amount of the deed of trust is the measure? Because that would be the amount in controversy. Why? I mean, they're never getting the house outright, so why is that the amount of controversy? Because at the foreclosure sale, the house would be sold. So the total amount, the total value of the amount of controversy is being sold. I don't understand that at all. I mean, the amount of controversy has to bear some relationship to what the plaintiffs would get, no? No, Your Honor. We would submit that it's not what would be sought to be recovered, but it would be valuable. You know, I think we'd better go back to civil procedure. The amount of controversy is the amount that the plaintiff seeks to recover and might actually get in the lawsuit, not the amount of money that might flow through the lawsuit in various transactions. Yes, Your Honor. We would submit that, you know, a key issue really is what the object of the litigation is. So it can't be the amount of the deed of trust because the object of the litigation is not to get the house outright. So what is the object of the litigation? The object of the litigation would be to at least stop a foreclosure sale, which is secured by the deed of trust, and we would be looking at the value of the deed of trust. I thought the object of the litigation was to reform the interest rates. They were upset, the misrepresentation at the outset about the interest scheme, how it all worked. Right. That was what was alleged, but there was also allegations as to stopping a foreclosure sale peppered throughout the complaint, noting that the object is to stop the foreclosure sale, halt the foreclosure sale, and that was a key object of the litigation. In addition, the key really was the fact that there was notices of default recorded and that a lot of this was brought, and this lawsuit was brought to stop the sale. What a mess. Let's assume for the moment that there's proper jurisdiction in the district court. Could you enlighten the court as to whether the opposition was late, and if so, by how much? Absolutely, Your Honor. With respect to the filing of the motion to dismiss, that filing took place on June 17th with a motion date of July 22nd. According to Local Rule 7-9, the opposition was due 21 days before the hearing, and 21 days before July 22nd would have been July 1st. The district court issued its dismissal order on July 12th. What day was the opposition filed? The opposition was filed that same day. Literally, I think it was almost minutes, within minutes of when the district court issued its order. The order says hasn't been filed, but I gather the opposition was coming in almost simultaneously. Almost simultaneously, Your Honor. So the court's calculation earlier was correct. It was about two weeks. Was there a motion to reconsider filed saying, you know, actually we just filed it? You thought we hadn't filed it, but we just filed it, so you should reconsider it on the basis that it's late, not on the basis that we didn't file it? No, Your Honor. They never asked for that? No, Your Honor. Did you suffer any prejudice as a result of the delay? Incredible prejudice, Your Honor. It doesn't have to be incredible, it just doesn't have to be prejudice. There was substantial prejudice, Your Honor, and the reason why Judge Pius said there was prejudice is that, you know, it did allow plaintiffs to remain in the property payment-free to this day. No, the question is, was there prejudice from the fact that they'd filed their opposition two weeks late? Well, it would have been some prejudice, Your Honor, given the fact that we would have had to scramble to, you know, get our reply briefed down, and that would have been, you know, we wouldn't have the opportunity. Well, the obvious answer was the whole thing would have been put over, but... That would be potentially correct? The answer is minor, if any. Potential. Not incredible. Well, maybe we'll say what you say is incredible. That is to say, it doesn't sound as though there was much prejudice. It would have been delayed a little bit. Had the plaintiff engaged in any other dilatory tactics before this one? Your Honor, the plaintiff has filed a number of TRO attempts as well. I mean, missed deadlines or anything? Well, Your Honor, yes, there was a violation of Local Rule 7-3 as to the motion of remand, which requires a conferring with counsel prior to filing that was noted by the district court that the plaintiff had failed to file local rules prior, which was a requirement that the parties meet and confer prior to the filing of a motion, which did not occur. So there had been a prior violation of local rules. Unless there's anything else. Did you seek dismissal based upon the late filing, or was this sua sponte by the district court? It was sua sponte, probably within minutes of the opposition being filed. Right, right. No, but what I'm asking is, you didn't ask for this dismissal based upon the lateness. The district judge did it on his own. That's correct, Your Honor. Finally, do you want to briefly comment on the merits, assuming we get there, as to the dismissal? I mean, this question of what California, in fact, is on the discovery rule, where there is a writing which could have been read, but the claim is we were told otherwise and we didn't read it. Well, yes, Your Honor, we would submit that the statute of limitations had long passed. I know that's your submitting. I'm asking you what California law, what California case law says as to this precise question, either in this context or others. I think it arises in fraud cases. It arises in oral evidence cases, i.e., in what circumstances can the fact of a contrary statement, an alleged contrary statement by the defendant, override any presumption of having read the document? We would only see that usually in promissory estoppel cases, where there's a promissory estoppel claim, not in a breach of contract claim, because most courts have found that it's barred by the four-year statute of limitations for breach of contract or the three-year statute of limitations for fraud. So generally, we would see it in a case where there was something lost based on the failure to discover it that wasn't in a written contract. So someone would generally allege a promissory estoppel claim. We also see it in TILA cases, Truth in Lending Act cases, where a plaintiff tries to rescind a loan based on issues with loan payments or disclosures, and federal law holds that there's a one-year statute of limitations in a TILA. So generally, in those cases... I thought there were some circumstances, narrow, but some, in which California would recognize a claim that because I was told X, I didn't read the documents, and even had I read them, I would have understood something. Yes, Your Honor. There are, in the cases that I have seen, are all relating to causes of action for promissory estoppel. That somebody didn't do something because they misread something in a contract or it wasn't directly stated or it was some sort of oral promise. Okay. Thank you. Mr. Poole, you have saved some time. Yes, thank you, Your Honors. Just briefly, my esteemed opposing counsel stated just now that it was speculative. He said it was tied to the LIBOR, which goes up and down. The standard is legal certainty. Well, does it make any difference that one could certainly think, reading your complaint, that you were looking for all of the payments to be recouped, i.e., you were essentially looking for rescission? Well, I was looking for... Well, I'm not asking what you were looking for. I'm asking you what your complaint said and what somebody reading your complaint could think the case was about. I think the complaint is clear that they were only looking for the difference in interest up until the time the lawsuit was filed. However, you still don't know what the number's going to be. As he said, it could have been lower. You yourself pointed out that the rate could be lower. So when you do the calculations, it's just pure speculation because we don't know what the interest rate is going to be. And the standard is legal certainty, and they didn't prove that. So I think it follows, necessarily, that you have to remand. Well, it may follow that if the complaint, fairly read, asks only for the difference in the interest between what's required under the note and what should have been required, that that may be right. On the other hand, if the complaint, read fairly, asks for rescission and refund of interest already paid up to the date of filing, that's the calculation of the district judge, then the number is higher than $75,000. So it depends on what the complaint says. That's all, Your Honor. Okay. Thank you. Thank both sides for your arguments, and we're about to see you again. But for the moment, I will say the Gustafson versus SunTrust mortgage is now submitted for discussion.
judges: Fletcher, Paez, Berzon